LAND, J.
Plaintiff sued for $12,500 on account of damages alleged to have been caused to his farm and crops during the years 1908 and 1909 by alleged unlawful obstructions to natural drainage created by the roadbed and embankments of the defendant company. The petition alleges that said constructions closed, or partially closed, all natural drainage or water courses running through and near the plaintiff’s property, and particularly the stream known as “Coule,” thereby causing the water to be diverted from its natural course, back up and overflow and inundate said property, rendering the same valueless for farming or other purposes.
Defendant for answer denied .all the allegations of the petition. The case was tried by a jury, which rendered a verdict in favor of the plaintiff for $5,000, and ordered the defendant to double the size of its bridges and openings over the Bayou Coule. Defendant has appealed from the judgment rendered pursuant to the verdict.
Plaintiff’s case depends on the establishment of the proposition that the overflows by which his crops were destroyed in 1908 and 1909 were caused by obstructions to natural drainage resulting from the works erected by the defendant company.
On the trial below, the plaintiff in his testimony attributed the alleged damages to the obstruction of the Bayou Coule at the point where it is crossed by the railroad or trestle bridge of the defendant company. Plaintiff’s testimony in substance is that the opening at the railroad bridge over the Coule is insufficient to allow the passage of the waters of that stream, which, being arrested by the embankments and bridge, back up and flood the lands immediately north of the railroad.
The bed of the Coule at the railroad bridge is about 100 feet wide, and the opening is about 225 feet in length. The only obstructions to the free flow of the waters at that point are the pilings of the bridge. At all other points both above and below the bridge *528 the bed of the Coule is obstructed by trees, bushes, logs and drifts. Rising in and flowing through the swamp of the same name, the current of the Coule, where it has any, is very sluggish. The stream has very-low banks. Half a mile above the bridge, the Patton slough empties into the Coule. The plaintiff’s farm lies along the Patton slough, and, according to his testimony, was overflowed by waters from that stream. Plaintiff explained the situation as follows:
“The water from the Coule gets so high there that the outlet is not sufficient for it to go through, and it goes on south, and begins to spread out north, backs up the Coule, up the Patton slough, and also up the railroad, in fact it floods everything north of the railroad for one or one and a half miles or more — the whole woods and everything is under water. I have seen it for three days at a time.”
In the same connection, the plaintiff stated that the current was very swift below the railroad bridge.
The railroad bridge over Bayou Coule is the ordinary pile bridge, composed of wooden piles driven into the ground 19 feet apart, stringers, cross-ties, and rails. There is no evidence to show that the waters of. the Coule at any time during the years 1908 and 1909 ever rose high enough to reach the stringers of the bridge. Mr. Miller, engineer of river protection, in the employ of the defendant, after examining the levels as shown in the map filed in evidence, testified that when the water was sufficiently high to completely overflow the plaintiff’s plantation there would still be 1.6 feet of space between the surface of the water and the bottom of the stringers of the bridge.
Mr. Haydock, the engineer who ran the levels and made the map referred to, and Mr. Miller, and another engineer all testified that the space opening at the bridge is more than sufficient for the passage of the waters of the Bayou Coule.
The report of S. 6. Hidinger, government expert in drainage, who, in 1907, surveyed the Coule drainage district, furnishes valuable information as to conditions in the Coule swamp. We make the following extract from said report:
“The natural drainage of the district is through Bayou Coule and a number of tributary sloughs. These are obstructed by logs and drift, growing trees, bushes, and other obstructions, which have checked them at different places, so that it takes several days after a heavy rain for the water to run off, and, where there is an abnormal rainfall, as there has been there these past three seasons, the land is overflowed, and is not suitable for cultivation. Bayou Coule flows almost parallel to, and about three-quarters of a mile from, Bayou De Gal-lion, until near the southern end of the district, where it empties into the latter stream. Besides the natural rainfall in this district, the lower end is flooded by overflows from Boeuf river. * * * Part of this water backs up Bayou De Gallion and Bayou Coule, thus retarding the drainage of the district. * * * The annual rainfall is quite heavy, averaging 56.55 inches for the past five years. The soil is of such a texture that the water passes through it quite slowly, and it soon becomes saturated. This requires a high per cent, of runoff to be used in computing the size of the drains.”
The expert recommended the construction of a drainage canal, with a ditch intercepting two of the tributaries of Bayou Coule, and that all obstructions be removed from the channel and banks of the streams. The report continues:
“A careful examination of Bayou Coule was made to ascertain what improvements would be necessary to enable it to carry the required amount of water to relieve the land not affected by the ditch. The grade and cross-sections of the land were obtained, and it -was estimated that the present channel was amply large enough and will carry off the water, provided the obstructions are removed.
“These obstructions, as stated above, consist of growing trees, bushes, vines, logs, drift,” etc.
In the carefully prepared report of this expert there is no suggestion that the trestles and embankments of the defendant affect the drainage of the swamp or interrupt the free flow of water down the streams.
As the channel of Bayou Coule, at the railroad crossing, is 100 feet wide and the trestle bridge is 225 feet long, there is 125 feet of extra space for the passage of the waters of that stream.
*530 As already stated, the government’s expert reported “that the present channel was amply large enough and will carry off the water, provided the obstructions are removed,” and that the obstructions referred to consist of growing trees, bushes, vines, logs, drift, etc. It follows that the overflows of the Bayou Coule were, in the opinion of said expert, caused by such obstructions in its bed from its source to its mouth. Compared with such obstructions, the piles of the bridge, 19 feet apart, sink into insignificance. We cannot conceive how the open piling could raise the level of the stream as a whole, as the flow between the piles was not obstructed, and water seeks its own level. The extra space of 125 feet was left open for the passage of the overflow water of the stream. It is obvious that no part of this space could be filled until the waters of the Coule had overflowed its banks north of the bridge. The only obstructions placed by the defendant in the whole space of 225 feet apart were piles 19 feet apart. The contention of the plaintiff that the piling of the bridge backed up the waters of the bayou and caused the two overflows complained of in his petition is unsupported by the evidence, and is unreasonable on its face.
Plaintiff’s counsel admit that the defendant’s expert witnesses are competent, but argue that their conclusions cannot be accepted because they did not know the average amount of water that flowed down the Coule. The government expert already mentioned, after carefully considering all the data, concluded that all the waterfall of the drainage district could be taken care of by a ditch or canal of about 132 square feet under the railroad track at one point, and the natural channel of the Coule of about 325 square feet, at the bridge in question. Comparing the total 457 square feet of openings in the track as recommended by the expert with the openings in defendant’s three bridges behind plaintiff’s farm, and within the space of one mile, Mr. Miller found that the latter provided a channel space of 558 square feet, or a total space of 1,442 square feet below the stringers, deductions made for piling. Under this state of facts it cannot be affirmed that the evidence shows that the defendant unlawfully obstructed the flow of the waters of the Coule, and thereby caused the overflows of plaintiff’s farm as alleged in the petition. The report of the government expert and the evidence in the record show that the water courses in the Coule swamp have their outlet in a lake; are at times backed up by overflows from Boeuf river; that their channels are obstructed by trees, logs, drifts, etc.; and that the waters overflow whenever the rains are unusually heavy. One witness testified that he had seen the waters of Bayou Coule running upstream. Another testified that when Bayou De Gal-lion overflowed north of the railroad its waters ran across the swamp and emptied into the Bayou Patton in front of plaintiff’s farm. There is other testimony to the effect that the water sometimes ran north on one side of the railroad track and south on the other. All the probabilities point to the conclusion that the alleged overflows of 1908 and 1909 were caused by conditions over which the defendant had no control and for which it is not responsible. There is abundant evidence in the record showing that 1908 and 1909 were wet years; that the farmers in the Coule swamp made little or no crops in those years; and that most of the farms in said swamp had been abandoned.
It is therefore ordered that the judgment and verdict below be reversed, and it is now ordered that plaintiff’s suit be dismissed, with costs in both courts.